IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:10-CR-36-D

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>) **ORDER**<br>)<br>DEWAYNE JEMALE BLAKENEY, )<br>)<br>Defendant. ) | |

On November 18, 2010, DeWayne Jemale Blakeney ("Blakeney" or "defendant") pleaded guilty, pursuant to a written plea agreement, to one count of manufacturing counterfeit Federal Reserve Notes in violation of 18 U.S.C. § 471. The statutory maximum for violating 18 U.S.C. § 471 is twenty years' imprisonment. On January 31, 2011, the United States moved for an upward departure [D.E. 34], and argued that defendant's criminal history category substantially under-represents the seriousness of defendant's criminal history or the likelihood that defendant will commit other crimes. See U.S. Sentencing Guidelines Manual § 4A1.3(a), [hereinafter "U.S.S.G"].

On May 18, 2011, the court held the sentencing hearing. After considering all of the evidence presented and the arguments of counsel, the court granted the government's motion for an upward departure, considered all of the factors under 18 U.S.C. § 3553(a), and sentenced Blakeney to 120 months' imprisonment. The court enters this order to explain Blakeney's sentence.

I.

The court has reviewed the revised Presentence Investigation Report ("PSR") and adopts the facts stated in the revised PSR. See Fed. R. Crim. P. 32(i)(3). On May 7, 2009, police officers arrested Blakeney for passing $100 in counterfeit currency the day before in Vanceboro, North

Carolina. PSR ¶ 4. At the time of his arrest, Blakeney possessed an authentic $20 that had the same serial number as the counterfeit currency. Id. On May 20, 2009, Blakeney, Nicki Nolder, and Ashley Duzan drove together to the Walmart in Washington, North Carolina. Id. En route, Blakeney stated that he had "some money he needed to get rid of," and provided instructions to Duzan and Nolder about how to pass counterfeit currency. Id. Nolder attempted to buy a computer with 20 counterfeit $20 bills. Id. When informed the money was counterfeit, Nolder fled the scene. Id. Duzan attempted to purchase gift cards with 9 counterfeit $20 bills. She was apprehended at the scene. Id. Duzan cooperated, naming Blakeney as having provided the bills. Id. Secret Service agents executed a search at an abandoned trailer in Craven County. Id. ¶ 5. At the trailer, agents seized $210 in counterfeit currency, an envelope addressed to Blakeney, an inkjet printer used to make the bills, and other evidence consistent with counterfeiting. Id. Agents arrested Blakeney, who admitted to manufacturing $2,000 in counterfeit currency. Id. He also admitted to conspiring with Noah Campbell and Thomas King and jointly manufacturing $30,000 in counterfeit bills. Id.

On November 18, 2010, Blakeney pleaded guilty, pursuant to a written plea agreement, to one count of manufacturing counterfeit Federal Reserve Notes in violation of 18 U.S.C. § 471. Id. ¶¶ 1, 3. In the revised PSR, the probation officer calculated 15 criminal history points, producing a criminal history category of VI. See id. ¶¶ 39–41. Blakeney benefits from the 4-point cap in U.S.S.G. § 4A1.1(c). The probation officer calculated an offense level of 14 after a 4-level increase for the amount of counterfeit currency (U.S.S.G. § 2B5.1(b)(1)(B)), a 2-level enhancement for possessing device-making equipment (U.S.S.G. § 2B5.1(b)(2)(A)), a 2-level role enhancement (U.S.S.G. § 3B1.1(c)), and a 3-level reduction for acceptance of responsibility (U.S.S.G. § 3E1.1). Id. ¶¶ 65–74. The corresponding advisory guideline range is 37 to 46 months' imprisonment. See id. ¶¶ 76–77.

2

Blakeney raised four objections to the PSR. PSR add. The first three objections have no impact on the advisory guideline range and are overruled. In the fourth objection, Blakeney argues that he should not receive a 2-level role enhancement pursuant to U.S.S.G. § 3B1.1(c), and contends that he was not an organizer, leader, manager, or supervisor of criminal activity. Id. Blakeney claims that he was acting at the behest of Campbell and that Campbell was in a relationship with either Nolder or Duzan. Id.

Section 3B1.1 provides for a two-level enhancement when a defendant organizes, leads, manages, or supervises criminal activity. U.S.S.G. § 3B1.1(c). For the enhancement to apply, the defendant must have organized, led, managed, or supervised one or more other participants. Id., cmt. n.2. "There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." Id., cmt. n.4. However, the adjustment "does not apply to a defendant who merely suggests committing the offense." Id. Furthermore, a defendant must do more than simply supply or sell contraband to co-conspirators. United States v. Slade, 631 F.3d 185, 190 (4th Cir. 2011). In considering whether to apply the enhancement, a court should consider "the degree of participation in planning or organizing the offense," "the degree of control and authority exercised over others," and "the recruitment of accomplices." U.S.S.G. § 3B1.1 cmt. n.4.

Here, the facts support applying the two-level enhancement. Blakeney raised the idea of using counterfeit currency on the way to Walmart. PSR ¶ 4. Although mere suggestion of a crime is insufficient to support the enhancement, Blakeney recruited two accomplices and gave Duzan and Nolder instructions on how to pass fake money. Id. Recruiting accomplices and providing instructions and supplies to those accomplices warrants the enhancement. See, e.g., United States v. Harriott, 976 F.2d 198, 202 (4th Cir. 1992); United States v. Kincaid, 964 F.2d 325, 329 (4th Cir. 1992). Moreover, coordination of the activities of others is also sufficient to warrant the

3

enhancement. United States v. Bartley, 230 F.3d 667, 674 (4th Cir. 2000). Thus, the enhancement applies.

II.

The Supreme Court has described the process for imposing a sentence under the now-advisory sentencing guidelines:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable [United States Sentencing] Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

Gall v. United States, 552 U.S. 38, 49–50 (2007) (footnote and citations omitted); see Pepper v. United States, 131 S. Ct. 1229, 1241–45 (2011); Nelson v. United States, 129 S. Ct. 890, 891–92 (2009) (per curiam); Spears v. United States, 129 S. Ct. 840, 842–43 (2009) (per curiam); Kimbrough v. United States, 552 U.S. 85, 101 (2007) ("[W]hile the statute still requires a court to give respectful consideration to the Guidelines, [United States v.] Booker[1] permits the court to tailor the sentence in light of other statutory concerns as well." (citations & quotation omitted)); Rita v. United States, 551 U.S. 338, 357–58 (2007); United States v. Diosdado-Star, 630 F.3d 359, 363–366 (4th Cir. 2011); United States v. Carter, 564 F.3d 325, 328–30 (4th Cir. 2009); United States v. Evans, 526 F.3d 155, 160–61 (4th Cir. 2008); United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007). The court recognizes its duty within this framework to "make an individualized assessment

---

[1] 543 U.S. 220 (2005).

based on the facts presented," Gall, 552 U.S. at 50, and to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [the sentencing statute]." 18 U.S.C. § 3553(a); see, e.g., Spears, 129 S. Ct. at 842–43; Kimbrough, 552 U.S. at 100–01; Carter, 564 F.3d at 328–30.

## III.

First, the court must calculate the applicable advisory guideline sentencing range. See, e.g., Gall, 552 U.S. at 49–50. As mentioned, the applicable advisory guideline sentencing range is 37 to 46 months. See PSR ¶¶ 76–77. The court next must determine whether a sentence within the applicable advisory guideline sentencing range serves the factors set forth in 18 U.S.C. § 3553(a) and, if not, select a sentence within statutory limits that does serve those factors. See, e.g., Gall, 552 U.S. at 49–50; Pauley, 511 F.3d at 473. In doing so, the court may look to whether a departure is appropriate based on the sentencing guidelines or relevant case law. See Diosdado-Star, 630 F.3d at 366; Pauley, 511 F.3d at 473. The court also must consider whether the factors set forth in 18 U.S.C. § 3553(a) warrant a variance. See Diosdado-Star, 630 F.3d at 366; Pauley, 511 F.3d at 473. Provided that "at least one rationale is justified and reasonable," "the method of deviation from the Guidelines range . . . is irrelevant." Diosdado-Star, 630 F.3d at 365–66.

### A.

Criminal history category VI applies to Blakeney. An upward departure may be warranted when a defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that defendant will commit other crimes. See U.S.S.G. § 4A1.3(a)(1); United States v. Myers, 589 F.3d 117, 125 (4th Cir. 2009); United States v. Lawrence, 349 F.3d 724, 726–27 (4th Cir. 2003). Under section 4A1.3(a)(4)(A), "the court shall determine the extent of a departure under this subsection by using, as a reference, the criminal history

5

category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's." U.S.S.G. § 4A1.3(a)(4)(A). The background commentary to section 4A1.3 recognizes that "the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur." U.S.S.G. § 4A1.3 cmt. background. For example, "a defendant with an extensive record of serious, assaultive conduct who had received what might now be considered extremely lenient treatment in the past might have the same criminal history category as a defendant who had a record of less serious conduct." Id. In conducting this determination, the court may "move to successively higher categories only upon finding that the prior category does not provide a sentence that adequately reflects the seriousness of the defendant's criminal conduct." United States v. Cash, 983 F.2d 558, 561 (4th Cir. 1992).

First, the court determines that an upward departure under section 4A1.3(a) is appropriate and that the court should increase defendant's criminal history category. Blakeney is 38 years old and has a deeply troubling history of relentless criminal conduct. Blakeney has spent most of his adult life committing crimes, resulting in 29 convictions. Blakeney has two larceny convictions and seven controlled substance convictions. PSR ¶¶ 9, 10, 14, 16, 19, 22, 23, 24, 34. But for the time-period limitations in section 4A1.2(e) and the 4-point limitation in section 4A1.1©, Blakeney would have a staggering total of 33 criminal history points. Cf. U.S.S.G. § 5A (sent'g tbl.) (13 or more criminal history points yield a criminal history category VI). Furthermore, Blakeney's criminal history is replete with examples of leniency, see, e.g., PSR ¶¶ 10, 14, 16, 20, 24, including a lack of punishment for repeated violations of probationary sentences. See, e.g., id. ¶¶ 10, 11, 12, 13, 14, 16, 17, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29. Moreover, Blakeney squandered the opportunity that Judge Malcolm Howard of this court gave to him in 2004, when Judge Howard reduced Blakeney's sentence for a crack conspiracy conviction from 140 months to 60 months. Id. ¶ 23.

6

In purported mitigation of his relentless criminal behavior, Blakeney argues that 7 of his 29 convictions are "related" to his "acrimonious" relationship with Bernitta Webster. PSR add. ¶ 1. Furthermore, Blakeney notes that 10 of his over 50 arrests were also attributable to this "failed relationship." Id. ¶ 2.[2] Blakeney's argument gives new meaning to the phrase "blame the victim." Notably, Blakeney pleaded guilty to each of the 7 offenses at issue. Blakeney also does not explain how Ms. Webster caused him to resist arrest, another offense to which Blakeney pleaded guilty. PSR ¶ 31. Moreover, and in any event, even ignoring those 7 convictions and 10 arrests, Blakeney would still have amassed a staggering 22 convictions in 17 years, over 6 years of which he was incarcerated.

In light of the entire record, the court finds that defendant's record, spanning nearly 20 years, reflects recidivism and a near certain likelihood of future recidivism. See U.S.S.G. § 4A1.3(a)(1). Thus, the court finds that criminal history category VI woefully fails to account for the nature and seriousness of Blakeney's criminal history or the likelihood that he will commit other crimes. An upward departure based on a similar combination of many of the above stated facts — namely, an extensive history of criminal conduct, a history of lenient treatment, and a serious risk of recidivism — is supported by case law. See, e.g., Myers, 589 F.3d at 125–26 (affirming departure based on both the defendant's extensive criminal history that was stale under § 4A1.2(e), and defendant's failure to change despite federal incarceration and supervised release); United States v. Grubbs, 585 F.3d 793, 803–05 (4th Cir. 2009) (affirming departure based on criminal history category under-

---

[2] In addition to Blakeney's 29 convictions, the PSR references more than 50 other arrests. See PSR ¶¶ 42–44. Blakeney referenced his arrest record in his objections to the PSR. See PSR add. ¶ 2. The court is not upwardly departing based on Blakeney's arrest record. Cf. U.S.S.G. § 4A1.3(a)(3). Rather, the court mentions the arrests in response to Blakeney's argument about his arrest record. Cf. United States v. Dixon, 318 F.3d 585, 591 (4th Cir. 2003). Obviously, such arrests "catalogue an additional example of [Blakeney's] repeated contact with the criminal justice system . . . ." United States v. Brown, 516 F.3d 1047, 1053 (D.C. Cir. 2008). Nonetheless, the conduct on which the court relies for the upward departure is the conduct reflected in the 29 convictions, PSR ¶¶ 9–37, the 3 probation violations, id. ¶¶ 9, 35, 36, and the 4 revocations, id. ¶¶ 9, 23, 35, 36.

7

representing defendant's criminal history and likelihood of recidivism); United States v. Whorley, 550 F.3d 326, 339–43 (4th Cir. 2008) (affirming sentence that was 131 months above advisory guideline calculation and 60 months above statutory minimum based, in part, on under-representation of the defendant's criminal history); Evans, 526 F.3d at 159–60, 162–66 (affirming 95-month departure based, in part, on under-representation of defendant's criminal history); United States v. Harris, 241 F. App'x 88, 91 (4th Cir. 2007) (per curiam) (unpublished) (affirming departure based, in part, on extensive criminal history that was stale under § 4A1.2(e)); United States v. Denkler, 232 F. App'x 336, 340–41 (4th Cir. 2007) (per curiam) (unpublished) (affirming departure under U.S.S.G. § 4A1.3 based upon prior lenient treatment); United States v. Lamb, 155 F.3d 562, 1998 WL 413995, at *4 (4th Cir. 1998) (per curiam) (unpublished table decision) (affirming departure under U.S.S.G. § 4A1.3 based, in part, on prior lenient sentencing for a serious offense).

Next, the court addresses the extent of the upward departure. A district court may exercise its discretion under the guidelines not to depart. See, e.g., Cash, 983 F.2d at 561. A court that elects to depart upwardly under section 4A1.3 must move horizontally across successive criminal history categories up to category VI, and, if category VI is inadequate, is to then vertically traverse to successively higher offense levels. See, e.g., U.S.S.G. § 4A1.3(a)(4); United States v. Dalton, 477 F.3d 195, 200 (4th Cir. 2007). From category VI, the court must "structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." U.S.S.G. § 4A1.3(a)(4)(B). A court is free to depart more than one category or level. See, e.g., Dalton, 477 F.3d at 199. Furthermore, a court need not "go through a ritualistic exercise in which it mechanically discusses each criminal history category [or offense level] it rejects en route to the category [or offense level] that it selects." Id. (quotation omitted) (alterations in original).

8

Having found that Blakeney's criminal history category is woefully inadequate, the court exercises its discretion to depart. Based on the entire record, the court finds that criminal history category VI does not remotely reflect the extent and nature of Blakeney's criminal history or his near certain likelihood of recidivism. Accordingly, the court moves vertically down the offense level column. See, e.g., Dalton, 477 F.3d at 200. In doing so, the court moves to offense level 26 and finds that it adequately reflects the nature, number, and seriousness of Blakeney's prior convictions and the likelihood of Blakeney committing other serious crimes. Cf., e.g., United States v. Parker, 289 F. App'x 666, 668 (4th Cir. 2008) (per curiam) (unpublished) (affirming upward departure based on history of recidivism (much of which occurred on supervised release), nature of criminal conduct, and history of lenient punishments); Lamb, 1998 WL 413995, at *4; United States v. Stokes, 56 F.3d 62, 1995 WL 318566, at *1 (4th Cir. 1995) (per curiam) (unpublished table decision). Coupling criminal history category VI and offense level 26 yields an advisory guideline sentencing range of 120 to 150 months' imprisonment. See U.S.S.G. § 5A (sent'g table).

B.

The court next considers whether the resulting advisory guideline sentencing range serves the factors set forth in 18 U.S.C. § 3553(a). The court recognizes its obligation to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." 18 U.S.C. § 3553(a); see, e.g., Spears, 129 S. Ct. at 843–45; Gall, 552 U.S. at 49–50. These purposes include the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. See 18 U.S.C. § 3553(a)(2)(A)–(C). Of course, the court has considered, as appropriate, all of the factors set forth in 18 U.S.C. § 3553(a), and the arguments of counsel. The court must select a sentence

9

in light of the section 3553(a) factors, and must adequately explain the rationale for its sentence. See Spears, 129 S. Ct. at 843–45; Gall, 552 U.S. at 46, 50; Carter, 564 F.3d at 328; Evans, 526 F.3d at 164–65.

Blakeney stands before the court at 38 years of age with a long, profound, and disturbing criminal history. Blakeney is a recidivist's recidivist. Notwithstanding defense counsel's effort to minimize Blakeney's criminal conduct in this case, defendant's actions in the offense of conviction are very serious and harm the community. Blakeney's counterfeiting resulted in losses to at least 14 victims. Each time Blakeney used a counterfeit bill, he chose to commit another serious crime. Blakeney's conduct reflects no respect for the law. Indeed, instead of rejecting a criminal lifestyle following his first federal conviction and incarceration, Blakeney violated his supervised release conditions by engaging in new felonious criminal conduct. Even after a revocation of his supervised release and additional incarceration, Blakeney returned to his criminal behavior by again possessing controlled substances and committing the instant offense. Of course, violating probation and conditions of release is nothing new for Blakeney. Moreover, Blakeney has very little employment history and a substance abuse problem. Both specific and general deterrence are critical in this case, particularly given Blakeney's serious offense behavior, extensive criminal record, lack of respect for the law, poor performance while on probation or under supervision, and near certain likelihood of recidivism. Society has long needed protection from Blakeney and today will receive it.

The court has considered defense counsel's arguments and does not find that defendant has any intention to change his criminal behavior any time soon. Cf. Spears, 129 S. Ct. at 844–45 (emphasizing advisory nature of guidelines and authority of district court to sentence outside the advisory guideline range where a district court grounds the sentence in the section 3553(a) factors); Gall, 552 U.S. at 51–52 (noting the institutional advantage that district courts have over appellate

10

courts in assessing credibility and gaining insight needed to find facts and adjudge their import under section 3553(a)). Although defense counsel seeks to minimize the nature of Blakeney's criminal convictions, the sheer number of convictions over a prolonged period of time destroys the argument. The court also does not believe that the fact that his codefendants were prosecuted in state court is a mitigating factor. As for Blakeney, the court has considered his expression of remorse and request for another chance. The court does not believe defendant is credible and does not believe that he has any intention of changing his criminal lifestyle. The time for second, third, fourth, or fifth chances has past. Furthermore, to the extent defendant contends that the state court judgment in paragraph 34 of the PSR is incorrect, this court lacks authority to amend an allegedly erroneous state court judgment. See PSR add. ¶ 3; cf. D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923); Washington v. Wilmore, 407 F.3d 274, 279 (4th Cir. 2005). The Attorney General must calculate sentencing credit for time served. 18 U.S.C. § 3585; United States v. Wilson, 503 U.S. 329, 337 (1992). A district court should not consider potential credits for presentencing detention when weighing the 3553(a) factors. United States v. Figuried, 345 F. App'x 864, 865 (4th Cir. 2009) (per curiam) (unpublished).

The court shall impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offenses, and affords adequate deterrence to criminal conduct (both to Blakeney personally and others like him). The sentence also will provide the public much needed protection from further crimes of Blakeney and will provide ample time for substance abuse treatment and mental health treatment. Thus, for the reasons explained above and in open court, defendant Blakeney is hereby sentenced to 120 months' imprisonment.

Alternatively, the court notes that it would impose the same sentence as a variance sentence even if it has incorrectly calculated the advisory guideline sentencing range or incorrectly departed.

11

See, e.g., United States v. Savillon-Matute, 636 F.3d 119, 123–24 (4th Cir. 2011); United States v. Keene, 470 F.3d 1347, 1348–50 (11th Cir. 2006); United States v. Alvarado Perez, 609 F.3d 609, 619 (4th Cir. 2010) (Shedd, J. concurring); see also Grubbs, 585 F.3d at 804; Evans, 526 F.3d at 164–66; United States v. McClung, 483 F.3d 273, 277 (4th Cir. 2007). For the reasons explained above and in open court concerning section 3553(a) and the record in this case, the court believes that the alternative variance sentence of 120 months' imprisonment is the sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in [the sentencing statute]." 18 U.S.C. § 3553(a); cf., e.g., Spears, 129 S. Ct. at 843–45; Evans, 526 F.3d at 162–66 (affirming variance sentence of 125 months, even though advisory guideline range before upward departure was 24 to 30 months); United States v. Vowell, 516 F.3d 503, 511–13 (6th Cir. 2008) (affirming variance sentence of 780 months, even though advisory guideline range was 188 to 235 months); United States v. Pinson, 542 F.3d 822, 836–38 (10th Cir. 2008) (affirming variance sentence of 240 months, even though advisory guideline range was 84 to 105 months). Again, the court notes that Blakeney's conduct, both in this case and his criminal history generally, is serious, that he is a recidivist's recidivist, and that society needs protection from him. Furthermore, Blakeney has repeatedly demonstrated a lack of respect for the law despite repeated leniency. See United States v. Turcios-Flores, 368 F. App'x 397, 398–99 (4th Cir. 2010) (per curiam) (unpublished). The court announced the balance of defendant's sentence in open court and also described defendant's appellate rights.

IV.

The court has imposed defendant's sentence for the reasons discussed herein and the reasons discussed in open court, which are incorporated by reference. The order is intended to provide a statement of reasons for defendant's sentence, and does not alter or amend the court's judgment announced in open court.

12

SO ORDERED. This **27**day of May 2011.

                                                   JAMES C. DEVER III
                                                   United States District Judge